IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Charles Berry, Jr., | C. A. No. 2:09-2523-PMD-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Hardee's Food Systems, Inc., | |
| Defendants. | |

The pro se plaintiff, Charles Berry, Jr. (Berry), brought this employment discrimination action seeking relief pursuant to 42 U.S.C. § 2000e on September 28, 2009. On June 17, 2010, the defendant, Hardee's Food Systems, Inc. (Hardee's), filed a motion for summary judgment. By order of this court filed June 21, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. Despite this explanation, the plaintiff elected not to respond to the motion.

Since the plaintiff is proceeding pro se, the court filed a second order on July 29, 2010, giving the plaintiff an additional ten (10) days in which to file his response to the defendant's motion for summary judgment, and the plaintiff filed a response on August 10, 2010. Accordingly the motion is now ripe for review.

1

## PLAINTIFF'S CLAIM

The plaintiff's complaint in its entirety reads as follows:

> Hardee's said I was to slow and not good enough to work at Hardee's. I was subjected to disparate term, and condition, on August 10, 2008. Also my hours was cut from 1-2 days week. I could not make a living on that, and I believe I was discriminated on my civil rights by the store manger Ms. Tonya Brown, Gen. Manger, Ms. Ammerrith McAlhany. I talk to Mr. Adam Moore about this matter before it was not fair to me at all. Again, I feel I was discriminated, and in retaliation for my opposition to employment practices declared unlawful done wrong.

(Docket #1)(sic).

In response to special interrogatories propounded by the court, the plaintiff submitted a copy of his claim with the South Carolina Human Affairs Commission (SHAC) dated January 13, 2009. In that claim the plaintiff alleges he was discriminated because of age, retaliation and "other" during the period June 10, 2008 to October 13, 2008. As part of the complaint the plaintiff reported:

> II. RESPONDENT'S REASON(S) FOR ADVERSE ACTION: (A) Respondent said I was too slow. (B) Reason given that I was no longer needed because I filed a complaint with SHAC and that I was not good enough.
>
> III. COMPLAINANT'S CONTENTION(S): (A) I contend that I was no slower than some of the younger employees. I believe I was treated in this manner because of my age. I am the oldest employee, and none of the other (younger) employees' hours were cut. (B) Mr. (first name unknown) Adams, Human Resource Manager in North Carolina is the individual who told me that I was being discharged for filing this complaint. Ms. Ammerrith

2

McAlhany, General Manager and Ms. Tonya Brown,
Store Manager told me that I was not good enough.

(Docket # 12).

Also attached was a claim dated September 3, 2008, alleging he was discriminated in either June or August 2008 by having his hours of work reduced. Further on the court's special interrogatory the plaintiff indicates the discrimination was based on disability. (Docket # 12).

### HARDEE'S MOTION

Hardee's Food Service Systems, Inc., seeks summary judgment (Docket # 36) asserting that the complaint was not filed timely, that there is no genuine issue as to any material fact and that the plaintiff is unable to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.

Specifically the defendant notes that the plaintiff received a notice of dismissal and notice of right to sue from SHAC on May 22, 2009, and in conjunction with that notice he was properly advised that the complaint in this court must be filed, "WITHIN ONE YEAR FROM THE ALLEGED VIOLATION OR WITHIN ONE HUNDRED TWENTY (120) DAYS FROM THE DATE OF ISSUANCE OF THIS NOTICE OF RIGHT TO SUE, WHICHEVER OCCURS EARLIER; OTHERWISE YOUR RIGHT TO SUE UNDER THE HUMAN AFFAIRS LAW IS LOST." Under any calculation of dates, that is one year from the alleged discrimination, September 22, 2008, the date he was discharged, or one hundred and twenty days

after the date of the SHAC decision on May 22, 2009, the last date for filing the complaint would have been September 22, 2009. The complaint was not filed until September 28, 2009. (Docket # 1).

Further Hardee's asserts the plaintiff cannot meet a *prima facie* case on any claim because he was not performing his job to the legitimate expectations of Hardee's. Further there is no evidence he was replaced by someone outside of the alleged protected class, that the position remained open, or that the plaintiff suffered from any disability. Finally the defendant asserts there is no causal connection between the plaintiff's work hours or discharge and any claims filed by him.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the

4

non-moving party. <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." <u>Teamsters Joint Council No. 83 v. CenTra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. <u>Ash v. United Parcel Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982).

## **AMERICANS WITH DISABILITIES ACT**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge." 42 U.S.C. § 12112(a). The term "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can

5

perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In turn, the plaintiff may demonstrate that he suffered from a "disability" at the time of her discharge in one of three different ways, any one of which can trigger the statute's protections. The ADA states: "(t)he term 'disability' means, with respect to an individual-(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Since the statute defines "disability" for each of subparts (A), (B), and (C) "with respect to the individual," the statute's individualized focus requires courts to make a case-by-case determination of whether a plaintiff has a disability. See, Cline v. Wal-Mart Stores Inc., 144 F.3d 294, 302 (4th Cir. 1998).

To establish a *prima facie* case under this provision, a plaintiff must show that (1) he is within the ADA's protected class, that is, he has a disability, (2) he was discharged (3) at the time of his discharge he was performing his job at a level that met his employer's legitimate expectations (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. See, Haulbrook v. Michelin N. America, 252 F.3d 696, 702 (4th Cir. 2001); Williams v.

6

Channel Master Satellite Sys., Inc., 101 F.3d 346, 348 (4th Cir. 1996) (per curium).

## AGE DISCRIMINATION

Under the ADEA, it is illegal for an employer to discriminate against an employee due to the employee's age. 29 U.S.C. § 623(a) (2006). The ADEA provides a civil cause of action for employees who are discriminated against by their employers because of their age. See, 29 U.S.C. § 626 (2006). An employee may establish an ADEA discrimination claim "through two alternative methods of proof: (1) a mixed-motive framework, requiring evidence that the employee's age motivated the employer's adverse decision, or (2) a pretext framework identical to the McDonnell Douglas burden-shifting analysis used in Title VII cases." E.E.O.C. v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir.2004); see also, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In order to establish an ADEA claim under the McDonnell Douglas framework, the plaintiff must first demonstrate a prima facie case of discrimination by a preponderance of the evidence. Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). To prevail under the burden-shifting framework, Plaintiff must first show: (1) he is "a member of a protected class"-that is, 40 years or older; (2) he "suffered an adverse employment action"; (3) he "was performing [his] job duties at a level that met [his]

7

employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open" or he was replaced by a substantially younger person. Id. If Plaintiff can establish a *prima facie* case, the burden then shifts to the Defendant to produce a legitimate, nondiscriminatory reason for its actions against Plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). And if Defendant meets this burden of production, the burden then shifts back to Plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. Hill, 354 F.3d at 285. Of course, this burden of production to demonstrate pretext "merges with the ultimate burden of persuading the court that Plaintiff has been the victim of intentional discrimination." Id.

### RETALLIATION

Section 2000e-3(a) of Title 42 of the United States Code provides, in relevant part,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

A plaintiff may demonstrate retaliation through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff must satisfy the "three-step proof process established

in McDonnell Douglas Corp. v. Green." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998), citing, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). First, the plaintiff must "establish, by preponderance of the evidence, a prima facie case of retaliation." Id. The plaintiff establishes a *prima facie* case by demonstrating (1) that he engaged in protected activity, (2) that he suffered an adverse employment action; and (3) that there is a causal nexus between the protected activity and the adverse action. Brockman v. Snow, 217 F. App'x, 201, 206 (4th Cir. 2007) (citing McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991)).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for his action. Laughlin, 149 F.3d at 258 (citing cases). If the defendant "meets the burden of production, the presumption of retaliation created by the *prima facie* case 'drops from the case,'" and the plaintiff then "bears the ultimate burden of proving" that he was the victim of retaliation. Id. (internal citation omitted.)

The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions

9

that affect the terms and conditions of employment." <u>Burlington Northern & Santa Fe Rwy. v. White</u>, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345. (2006). However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." <u>Id.</u> at 67 (emphasis added). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id</u>. at 68 (quotation marks and citations omitted).

**FACTS**

In the case at bar, the relevant facts taken in a light most favorable to the plaintiff as the nonmoving party, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

The plaintiff was hired as a cook at the Hardee's in St. George, South Carolina, on April 1, 2008, by the restaurant's general manager, Ammerrith McAlhany. The plaintiff was given four days of training, but was unable to master the basic skills of the job and was given an additional four days of instruction. Nevertheless he was unable to meet Menu Standard Guides or keep pace with food orders. One month into his employment the plaintiff was not performing his job, and when he was advised of

that by McAlhany he asked for another chance. McAlhany gave him a copy of the Menu Standards Guide for study, stressed that he needed to study to improve his performance and that he would not be given significant work hours until he could demonstrate the ability to perform his job without depending on others. (McAlhany Affidavit Docket # 36-2).

In August 2008, the Hardee's District Manager Ed Mount counseled the plaintiff that he needed to demonstrate the ability to assemble sandwiches with out the help of others if he wanted to receive more work hours. This same message was also given the plaintiff by Restaurant Manager Tanya Brown in August. (McAlhany Affidavit Docket # 36-2).

In September 2008, the plaintiff failed to appear for work without calling or giving other notice all in violation of Hardee's written attendance policy. He was then designated as terminated along with two other employees who also failed to meet the attendance policy the same week. (McAlhany Affidavit Docket # 36-2).

These facts are undisputed by the plaintiff, however, he does seem to interpret the defendant's complaints of poor "work performance" or a lack of "ability" as being code for "too old" or "handicapped." (Docket # 41). The plaintiff presented no evidence of a disability, no evidence of age related animus and no evidence that his protected activity was anything other than

temporally linked to his discharge.[1] Likewise the plaintiff does not dispute the circumstances surrounding his being designated as terminated.

## DISCUSSION

The plaintiff's case[2] fails in every aspect, and the defendant is entitled to summary judgment. There is no direct evidence of age or disability discrimination or that the decision maker's actions were in some way related to the plaintiff's protected activity. Nor can the plaintiff establish a *prima facie* claim of any type.

Relevant to all of the plaintiff's claims is the lack of evidence that he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action. With regard to age discrimination, there also is no evidence that his position remained open or that he was replaced by a substantially younger person, or any other evidence direct or indirect of age related animus. With regard to the disability claim, there is no evidence that the employer was aware of a disability or for that matter that there really

---

[1] In his January 2009 SHAC complaint, the plaintiff asserts "Adams, Human Resource Manager in North Carolina is the individual who told me I was being discharged for filing this complaint." There is no indication that Adams was involved in the decision to designate the plaintiff "terminated" when he failed to report to work without notice.

[2] It appears the plaintiff's complaint may not have been timely filed.

was a disability, much less one for which a reasonable accommodation would have allowed the plaintiff to successfully perform his work. Finally, there is no evidence that his protected activity was known to the decision makers herein or that there was any nexus between the protected activity and the adverse employment action.

Even if there were such evidence there is nothing which overcomes the defendant's non-retaliatory, non-discriminatory reason for its action, that is the plaintiff was not adequately performing his work and quit coming to work.

The plaintiff is pro se and his pleadings have been given the most liberal treatment. His complaint which failed to state any claim was focused by the court's special interrogatories into the claim currently before the court. The plaintiff was given a full and complete explanation of summary judgment procedures and of his burden. Nevertheless he failed to respond to the motion for summary judgment motion in a timely fashion and was given additional time. When he finally did file a reply, it was non-responsive to the factual issues. Unsupported speculation is not enough to withstand a motion for summary judgment.

Here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, and disposition by summary judgment is appropriate.

## CONCLUSION

Accordingly, for the aforementioned reason, it is recommended that the defendants' motion for summary judgment be granted, and that this matter be ended.

Respectfully Submitted,

*Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 15, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).